UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JEANNIE L. BURNS,

    Plaintiff,

v.                                                Case No. 5:14cv335/CJK

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

    Defendant.

_____/

MEMORANDUM ORDER

    This case is now before the court pursuant to 42 U.S.C. § 405(g) for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Jeannie L. Burns' application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-83. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have consented to Magistrate Judge jurisdiction for all proceedings in this case, including entry of final judgment. Upon review of the record before the court, I conclude that the Administrative Law Judge ("ALJ") erred in evaluating the opinion of Ms. Burns' treating physician. The decision of the Commissioner, therefore, should be remanded to the ALJ for additional proceedings consistent with this order.

## ISSUE ON REVIEW

Ms. Burns, who will be referred to as claimant, plaintiff, or by name, raises one issue. She claims the "Commissioner's decision should be reversed because the ALJ erred by committing errors of fact and of law in her consideration of the opinion of Samuel Ward, M.D., Ms. Burns' treating physician." (Doc. 14, p. 3).

## PROCEDURAL HISTORY

On June 7, 2011, plaintiff completed her application for SSI, alleging disability beginning on March 1, 2006. T. 173.[1] The Commissioner denied the application initially and on reconsideration. T. 73, 86. Claimant appeared before the ALJ for a hearing on January 14, 2013. T. 28. After the hearing, the ALJ found claimant was not disabled under the Act. T. 10-23. The Appeals Council denied claimant's request for further review and, as a result, the ALJ's decision became the final determination of the Commissioner. T. 1-3. The determination of the Commissioner is now before the court for review.

---

[1] The administrative record, as filed by the Commissioner, consists of seven volumes (docs. 12-2 through 12-8), and has 410 consecutively numbered pages. References to the record will be by "T.," for transcript, followed by the page number.

## FINDINGS OF THE ALJ

In her written decision, the ALJ made a number of findings relative to the issue raised in this appeal:

• Claimant has not engaged in substantial gainful activity since June 7, 2011, the application date. T. 15.

• Claimant has the following severe impairments: lumbago and sciatica due to disc bulges at T12-L1, L2-3, L3-4, L4-5; disc protrusion at L2-3; obesity; gastritis; edema; major depressive disorder; and panic disorder. T. 15.

• Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. T. 15.

• Claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b) except that she would require the ability to sit/stand at will; she should never climb ladders, ropes, or scaffolds; she can occasionally climb ramps and stairs; she can occasionally balance, stoop, crouch, kneel, and crawl; she should avoid concentrated exposure to moving machinery and unprotected heights; and she is limited to simple, routine, and repetitive tasks with only occasional changes in the work setting. T. 17.

- Claimant is unable to perform any past relevant work.  T. 21.

- Considering claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform.  T. 22.

- Claimant has not been under a disability, as defined in the Social Security Act, since June 7, 2011, the date the application was filed.  T. 23.

## STANDARD OF REVIEW

A federal court reviews a Social Security disability case to determine whether the Commissioner's decision is supported by substantial evidence and whether the ALJ applied the correct legal standards.  *See Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").  Substantial evidence is "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  With reference to other standards of review, the Eleventh Circuit has said that "'[s]ubstantial evidence is more than a scintilla . . . .'"  *Somogy v. Comm'r of Soc.*

*Sec.*, 366 F. App'x 56, 62 (11th Cir. 2010) (*quoting Lewis*, 125 F.3d at 1439). Although the ALJ's decision need not be supported by a preponderance of the evidence, "it cannot stand with a 'mere scintilla' of support." *See Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. *See Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, re-weigh the evidence, or substitute [its] judgment for that of the [Commissioner] . . . .'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). A reviewing court also may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *See Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *See Flynn v. Heckler*, 768 F.2d. 1273 (11th Cir. 1985); *see also Getty ex rel. Shea v. Astrue*, No. 2:10-cv-725-FtM-29SPC, 2011 WL 4836220 (M.D. Fla. Oct. 12, 2011); *Salisbury v. Astrue*, No. 8:09-cv-2334-T-17TGW, 2011 WL 861785 (M.D.

...
...

Fla. Feb. 28, 2011).[2]

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff not only is unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423(d)(2)(A). Pursuant to 20 C.F.R. §§ 416.920(a)-(g), the Commissioner analyzes a disability claim in five steps:

    1.    If the claimant is performing substantial gainful activity, she is not disabled.

    2.    If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

---

[2] The Eleventh Circuit not only speaks of an independent review of the administrative record, but it also reminds us that it conducts a *de novo* review of the district court's decision on whether substantial evidence supports the ALJ's decision. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

Case No. 5:14cv335/CJK

3. If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[3]

5. Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates the claimant's residual functional capacity and vocational factors, she is not disabled.

## FACT BACKGROUND AND MEDICAL HISTORY[4]

At the hearing before the ALJ, Ms. Burns offered testimony as to her health and

---

[3] Claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. *See* 20 C.F.R. § 416.912. ; *Chester v. Bowen*, 792 F. 2d 129, 131 (11th Cir. 1986).

[4] The recitation of the medical and historical facts of this case, as set out below, is based on the court's independent review of the record. As this appeal concerns only the ALJ's consideration of Dr. Samuel Ward's opinion, the facts section will focus on the records of Dr. Ward. Although intended to be thorough and to provide an overview of the claimant's history of care and treatment, the synopsis of medical evidence will be supplemented as necessary in the Analysis section.

Case No. 5:14cv335/CJK

daily activities. She has not worked since March 1, 2006, and lives with her grandmother, aunt, and nine-year-old son. T. 33, 35. She is 5'5" tall and weighs 424 pounds. T. 35. She believes she is unable to work due to chronic lower back pain that emanates to her hips and legs. T. 40, 42. She also experiences swelling in her legs and feet. T. 40. Sitting or standing for long periods exacerbates the swelling; she elevates her feet five to six times a day to alleviate the swelling and pain. T. 40-42. She can stand for twenty to thirty minutes at a time and sit for no more than thirty minutes. T. 40-41. She can carry up to ten pounds and can use her fingers for dialing a phone or typing on a computer. T. 41, 49. Performing activities like cooking and cleaning increases her pain. T. 43. Doctors have prescribed medication for pain, but she cannot take too much because it upsets her stomach. T. 42. To minimize gastrointestinal issues, claimant restricts her diet. T. 43. On "a lot of days," however, she "can't eat anything or drink anything without it going right through [her]" and causing several "unplanned bathroom breaks." T. 43. The gastrointestinal issues are accompanied by nausea and have gotten worse since her gallbladder was removed. T. 43-44. Medication is effective in controlling her acid reflux and diabetes. T. 44-45. She also takes medication for depression and panic attacks. T. 47-48. This medication does not cause her any side effects. T. 48.

Plaintiff experiences around three "bad days" per week. T. 47. On these days, she suffers from intense back pain; she stays in bed most of the day and requires help to move. T. 46. Her pain level rates from 8 to 8.5. T. 47. On good days, she can take a short drive to the store; her pain registers between a 5 and 6. T. 46-47. She has gone on school field trips with her son, but she had trouble participating in the activities and had to sit down. T. 46-47. When she goes shopping, she uses a motorized shopping cart. T. 48, 50.

On February 9, 2012, claimant visited Dr. Samuel Ward's office for an evaluation. T. 372. She reported she was on hormone pills and her anxiety and hot flashes were getting worse. T. 372. She also indicated she was under a great deal of stress, was very anxious, and experienced trouble sleeping. T. 373. After a physical examination, claimant was assessed with anxiety, benign hypertension, and depressive disorder. T. 373. Plaintiff received medication for depression and anxiety; she was instructed to return in one month. T. 373.

Ms. Burns returned on March 26, 2012, with complaints of swelling in the lower extremities. T. 371. The swelling had persisted for three weeks with no improvement. T. 371. A physical examination confirmed claimant had "non-pitting" edema in both legs. T. 372. Plaintiff received "hydrochlorothiazide" for treatment.

T. 372. On June 4, 2012, Ms. Burns visited Dr. Ward "to have paperwork completed for disability." T. 370. Dr. Ward noted claimant experienced "chronic lower back pain and chronic pain in bilateral lower extremities." T. 370. The doctor noted both of claimant's legs were still swollen. T. 371.

During the June visit, Dr. Ward completed a Clinical Assessment of Pain form. T. 360. The form indicates the following about Ms. Burns' condition: (1) pain is present to such an extent as to be distracting to adequate performance of daily activities or work; (2) physical activity will increase claimant's pain to such an extent that bed rest and/or medication is necessary (Dr. Word also underlined the word "medication"); and (3) prescribed medication will cause some limitations on claimant's ability to perform work but not to such a degree as to create serious problems in most instances. T. 360.

Dr. Ward also completed a Physical Capacities Evaluation form. T. 361. The form indicated that during a normal work day: plaintiff could carry twenty pounds occasionally and ten pounds frequently; sit for two hours; stand or walk for one hour; and she would not require an assistive device to ambulate. T. 361. Dr. Ward also concluded Ms. Burns would likely be absent from work more than four days per month. T. 361. Dr. Ward offered this explanation for his opinion: "[Patient] has pain

upon standing or sitting for prolonged periods of time. Legs swell and hurt during activities also." T. 361.

Claimant returned to Dr. Ward's clinic on July 5, 2012, seeking prescription refills and referral to a gastroenterologist due to persistent diarrhea. T. 369. She no longer had swelling or pain in her legs. T. 369. On July 24, 2012, Dr. Ward prescribed medication for plaintiff's eye after she complained of a left eye infection. T. 368.

On September 24, 2012, claimant visited Dr. Ward for prescription refills. T. 366. She reported "feeling well without any specific complaints." T. 366. A physical examination revealed no clubbing, cyanosis, or edema in her extremities. T. 366-67. Plaintiff returned on October 23, 2012, for prescription refills and to review laboratory testing results. T. 365. She denied experiencing abdominal pain and a physical examination revealed no edema. T. 365.

## ANALYSIS

Ms. Burns asserts the ALJ committed reversible error by failing to appropriately consider the opinion of Dr. Samuel Ward. (Doc. 14, p. 3-12). Although the ALJ stated Dr. Ward's opinion was given "significant weight," claimant contends the residual functional capacity ("RFC") formulated by the ALJ is inconsistent with

Dr. Ward's findings. (*Id.*, p. 4). Plaintiff also claims the ALJ misrepresented the opinion of Dr. Ward. (*Id.*, p. 5).

Plaintiff testified that Dr. Ward was her primary care physician, T. 34, and the ALJ referred to Dr. Ward as a treating physician. T. 19, 21. Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). "Good cause" exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips,* 357 F.3d at 1241; *see also Lewis*, 125 F.3d at 1440 (citing cases).

If the Commissioner finds that a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, the Commissioner, under the regulations, will give it controlling weight. 20 C.F.R. § 416.927(c)(2). Where a treating physician has

merely made conclusory statements, the Commissioner may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen,* 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the Commissioner must nevertheless weigh the medical opinion based on (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical impairments at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 416.927(c)(2).

> The ALJ's decision described Dr. Ward's opinion as follows:
>
> In June 2012, Samuel Ward, M.D., the claimant's treating physician, completed a clinical assessment of pain wherein he indicated that the claimant's pain required medication, not bed rest. He further indicated that the medication may cause some limitations but not enough to create serious problems and that she did not require an assistive device for ambulation. Dr. Ward opined that the claimant was capable of performing light work. His opinion is afforded significant weight to the extent that it is consistent with the above residual functional capacity.

T. 21.

The ALJ's reading of Dr. Ward's opinion was flawed. The ALJ stated "Dr. Ward opined that the claimant was capable of performing light work." T. 21. Under the Social Security regulations, light work:

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 416.967(b). Contrary to the ALJ's statement, Dr. Ward's opinion–as expressed on the Physical Capacities Evaluation form–does not suggest claimant is able to perform light work. Dr. Ward indicated that in an 8-hour workday, Ms. Burns could only sit for two hours and stand/walk for one hour. T. 361. As indicated above, however, light work requires a considerable amount of either sitting or standing/walking. *See* SSR 83-10, 1983 WL 31251 at *6 ("[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."). Dr. Ward's opinion, therefore, would appear inconsistent with an RFC for light work.

Furthermore, Dr. Ward believed claimant would miss four or more days of work per month. This level of absenteeism precludes gainful employment. *See e.g.*,

*Voigt v. Colvin*, 781 F.3d 871, 874 (7th Cir. 2015) ("To miss four workdays a month would reduce one's average workweek from five to four days, which would not constitute working on a sustained basis as defined by the Commission."); *Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1262 (M.D. Fla. 2012) (noting vocational expert testified person missing four or more days of work per month could not "be competitive in the job arena"). At the hearing, the vocational expert testified that employers permit no more than two absences per month for the occupations the ALJ concluded Ms. Burns could perform. T. 23, 57. Thus, the ALJ's assertion that "Dr. Ward opined that the claimant was capable of performing light work" is not supported by substantial evidence.

In briefing the issue, the Commissioner does not address the accuracy of the ALJ's statement or its effect on the determination of claimant's RFC. Instead, the Commissioner simply argues that the evidence in the record supports the ALJ's RFC assessment and the rejection of some parts of Dr. Ward's opinion. (Doc. 15, p. 9-17). From the decision under review, however, one cannot determine to what extent the ALJ's erroneous view of Dr. Ward's opinion influenced the RFC assessment. For example, at the end of her analysis the ALJ stated: "In sum, the above residual functional capacity assessment is supported by the claimant's subjective complaints,

the medical evidence of record and the opinions of Drs. Walker, Ward, Mauro." T. 21. Portions of Dr. Ward's opinion are indeed consistent with the ALJ-formulated RFC; but the ALJ's decision does not discuss the portions that suggest Ms. Burns is incapable of light work. If the ALJ did not mistakenly conclude Dr. Ward thought claimant could perform light work, perhaps the RFC assessment would have been different. For that reason, the court cannot conclude the error is harmless. *See Hanna v. Astrue*, 395 F. App'x 634, 636 (11th Cir. 2010) (*citing Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review.")

## CONCLUSION

Because the ALJ misinterpreted Dr. Ward's opinion, and it is unclear what effect that erroneous interpretation had on the assessment of Ms Burns' residual functional capacity, this case should be remanded to the Commissioner. Although concluding that remand is warranted, this court expresses no opinion as to the merits of plaintiff's claim for benefits.

Accordingly, it is ORDERED:

The Commissioner's decision is set aside, and the matter is REMANDED for further proceedings consistent with this order.

At Pensacola, Florida, this 9th day of March, 2016.


                */s/ Charles J. Kahn, Jr.*
                **CHARLES J. KAHN, JR.**
                **UNITED STATES MAGISTRATE JUDGE**